GLOBALOPTIONS SERVICES,
INC., Plaintiff,

v.

NORTH AMERICAN TRAINING
GROUP, INC., Defendant.

Case No. 6:14–cv–2048–Orl–40DAB.

United States District Court,
M.D. Florida,
Orlando Division.

Signed Aug. 19, 2015.

Kirsten Karin Ullman, Michael Shelby Sperounes, Lewis, Brisbois, Bisgaard & Smith, LLP, Tampa, FL, for Plaintiff.

Douglas J. Jeffrey, Law Offices of Douglas J. Jeffrey, PA, Miami Lakes, FL, for Defendant.

## ORDER

PAUL G. BYRON, District Judge.

This cause comes before the Court on the following:

1. Counterclaim Defendant's Motion to Dismiss Counts III–VIII and X–XII of Counterclaim (Doc. 16), filed January 27, 2015; and

2. Counterclaim Plaintiff's Response to Motion to Dismiss Counterclaim (Doc. 26), filed March 9, 2015.

Upon consideration, the Court grants in part and denies in part Counterclaim Defendant's Motion to Dismiss.

## I. BACKGROUND

### A. Procedural Background

 This lawsuit arises out of a contractual dispute between Plaintiff/Counter–Defendant, GlobalOptions Services, Inc. ("GlobalOptions"), and Defendant/Counter–Plaintiff, North American Training Group, Inc. ("NATG"). (Docs. 1, 12). On December 12, 2014, Global Options filed its three-count Complaint for declaratory judgment against NATG.[1] (Doc. 1). On January 6, 2015, NATG answered Global-Options' Complaint and asserted a twelve-count Counterclaim. (Doc. 12). GlobalOptions now moves to dismiss Counts III through VI and VII, VIII, X, XI, and XII of NATG's Counterclaim. (Doc. 16). Counts III through VI assert various copy-

right claims: direct copyright infringement (Count III), contributory copyright infringement (Count IV), vicarious copyright infringement (Count V), and inducing copyright infringement (Count VI). Count VII asserts a claim for misappropriation. Count VIII asserts a claim for accounting. Count X asserts a claim for temporary injunctive relief. Count XI asserts a claim for permanent injunctive relief. Finally, Count XII asserts a Florida common law claim for unjust enrichment. GlobalOptions does not move to dismiss Counts I, II, or IX[2] of NATG's Counterclaim. Count I asserts a claim for breach of the Service Agreement, Count II asserts a claim for breach of the Confidentiality Agreement, and Count IX asserts a claim for common law constructive fraud.

### B. Factual Background[3]

NATG provides insurance fraud and investigative training programs to insurance and investigative personnel. (Doc. 12, Counterclaim ¶ 5). As a result, NATG has developed copyrighted materials and pro-

---

1. This Court has original jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. § 1331 & U.S. Const. art. 1, § 8, cl. 8, and supplemental jurisdiction over all pendent state law · claims, 28 U.S.C. § 1367. While Global Options has sued NATG under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, that Act does not confer jurisdiction that does not otherwise exist. *Schilling v. Rogers,* 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) ("[T]he Declaratory Judgments Act is not an independent source of federal jurisdiction...."). The Act "allows suits for declaratory judgment where federal jurisdiction would exist in a coercive suit brought by the declaratory judgment defendant." *Ameritech Benefit Plan Comm. v. Commc'n Workers of Am.,* 220 F.3d 814, 818 (7th Cir.2000), *cert. denied,* 531 U.S. 1127, 121 S.Ct. 883, 148 L.Ed.2d 791 (2001). GlobalOptions, and NATG by virtue of its counterclaim, assert that their claims for de-

claratory relief arise under the Copyright Act, 17 U.S.C. §§ 101–1332. (Doc. 1, ¶ 65).

2. In the beginning of its motion to dismiss, GlobalOptions asserted it would be moving to dismiss NATG's claim for constructive fraud (Count IX). (Doc. 16, p. 5). However, GlobalOptions did not present any argument as to Count IX in its motion. Thus, to the extent GlobalOptions sought dismissal of Count IX, the motion is denied.

3. This account of the facts is taken from NATG's Counterclaim (Doc. 12), the allegations of which the Court must accept as true in considering GlobalOptions' motion to dismiss. *See Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir.1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.,* 711 F.2d 989, 994 (11th Cir. 1983).

prietary fraud investigative compliance training procedures and courses. (*Id.* ¶ 6). GlobalOptions is a leading provider of special investigative unit services. (*Id.* ¶ 7). In June 2009, NATG and GlobalOptions entered into a training agreement which led to a later execution of an addendum in February 2011. (*Id.* ¶ 11). Subsequently, GlobalOptions ceased contractual payments to NATG due to GlobalOptions' claim that it no longer provided certain services. (*Id.* ¶ 12). Due to the relationship between the parties, however, they were able to reach a new agreement which superseded the prior agreement and addendum. (*Id.*).

In June 2012, the parties entered into a Service Agreement, which became effective March 17, 2012. (*Id.* ¶ 13). The Service Agreement provided for performance standards and a confidentiality agreement by which the parties agreed to abide. (*Id.* ¶¶ 14–21). NATG contends that GlobalOptions "has pervasively violated NATG's proprietary rights and intentionally breached the Service Agreement by circulating without the consent of NATG and without compensation to NATG, the NATG Materials and proprietary course materials." (*Id.* ¶ 22). Specifically, NATG contends that GlobalOptions intentionally violated NATG's intellectual property rights, including NATG's copyrights, and unlawfully duplicated, altered, and disseminated NATG's copyrighted materials, proprietary fraud investigative compliance training processes and courses (collectively, the "NATG Materials"). (*Id.* ¶ 23).

## II. STANDARD OF REVIEW

■ In order to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible on its face when the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Mere legal conclusions or recitation of the elements of a claim are not enough. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. District courts must accept all well-pleaded allegations within the complaint as true. *Id.* Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994).

## III. DISCUSSION

### A. The Copyright Claims

#### i. Registration

■ GlobalOptions moves to dismiss NATG's Copyright Infringement Claims (Claims III through VI) for failure to allege that NATG's allegedly infringed copyrights were registered. (Doc. 16, pp. 6–7). NATG agrees that it has not alleged registration in its counterclaim, but argues that the registration requirement is not a condition precedent to bringing this suit. (Doc. 26, p. 3).

The Copyright Act provides, in pertinent part, as follows:

[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for

registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a) (2012).

The Eleventh Circuit "adopted the 'registration' approach in *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488–89 (11th Cir.1990), viewing the failure to register as a jurisdictional defect." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1302 n. 8 (11th Cir.2012), *cert. denied*, —— U.S. ——, 133 S.Ct. 1810, 185 L.Ed.2d 812 (2013). Twenty years later, the United States Supreme Court in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 163, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010), conclusively determined that the registration requirement is not jurisdictional, *i.e.*, it does not divest a federal court of jurisdiction to hear the case. However, the Supreme Court specifically "decline[d] to address whether § 411(a)'s registration requirement is a mandatory precondition to suit that ... district courts may or should enforce *sua sponte* by dismissing copyright infringement claims involving unregistered works." *Id.* at 171, 130 S.Ct. 1237.

As the Eleventh Circuit recognized in *Kernel Records Oy v. Mosley*, "Courts have divided on whether the filing of an application for registration with the Copyright Office is sufficient to comply with the statutory prerequisite, or whether a certificate of registration (or formal refusal)

must be issued prior to suit." 694 F.3d at 1301–02. In *Kernel Records*, the Eleventh Circuit turned to *Nimmer on Copyright* to determine when a jurisdictional action for copyright infringement can proceed. *Id.* at 1302. In § 7.16[B][3][c] of *Nimmer on Copyright*, Professor Nimmer states, "Absent issuance of a certificate and in the absence of the copyright owner even having sent the requisite application (together with deposit and fee) to the Copyright Office, there is, under all viewpoints, a defect under the statute (with respect to United States works that require registration)." 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16[B][3][c] (Matthew Bender, rev. ed.) (footnotes omitted). That is the case here: NATG has not alleged registration or preregistration of the works it seeks to protect. However, Professor Nimmer goes on to state that "as an absolute limit, if the Copyright office has failed to receive the necessary elements to use a registration certificate prior to the time that the court is called upon to issue final judgment, the action must be dismissed." *Id.* (footnotes omitted). The Eleventh Circuit seemingly approved this language in *Kernel Records*.[4] *Kernel Records*, 694 F.3d at 1302. Thus, applying the Eleventh Circuit's statements in *Kernel Records* to this case, the Court finds that NATG does not fail to state a claim for copyright infringement on the basis of failing to register or preregister. Certainly, during the pendency of litigation, NATG must at least preregister the materials for which it seeks copyright protection by the time the Court reviews the case on summary judgment or the parties proceed to trial.

---

4. Admittedly, the plaintiff in the district court in *Kernel Records* was in a different procedural situation than the one in the instant case. In *Kernel Records*, the plaintiff had failed to present proof of preregistration or registration on summary judgment. *Kernel Records*, 694 F.3d at 1302. By all accounts, the defendants in *Kernel Records* had not moved to dismiss plaintiff's complaint; they chose only to answer and assert as an affirmative defense plaintiff's failure to preregister or register. *Id.* at 1297.

### ii. Statutory Damages and Attorney's Fees

■ Next, GlobalOptions argues that NATG's claim for statutory damages and attorney's fees should be dismissed because NATG failed to register the NATG Materials. (Doc. 16, p. 7). The Copyright Act provides:

In any action under this title, ... an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for ... any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412 (2012); *see also Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F.Supp.2d 1248, 1270 (M.D.Fla.2009) ("Pursuant to 17 U.S.C. § 412, awards of statutory damages and attorney's fees are unavailable to the copyright owner if the infringing activity began after publication of the work but before registration unless registration is made within three months after first publication of the disputed material.").

Here, NATG seeks alternative statutory damages and attorney's fees pursuant to 17 U.S.C. §§ 504(c) and 505 in Counts III through VI. (Doc. 12, pp. 19–26). However, NATG does not allege that the NATG Materials sought to be protected were ever registered, much less "made within three months after the first publication of the work" which dates back, at the latest, to June 2012. This forecloses NATG's pursuit of statutory damages and attorney's fees under 17 U.S.C. §§ 504(c) and 505. Thus, NATG's claims for statutory damages and attorney's fees pursuant to 17 U.S.C. §§ 504(c) and 505 in Counts III, IV, V, and VI are stricken.

### iii. Direct Infringement

■ "To establish copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright, and (2) copying of [protectable] elements." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir.2012) (internal quotation marks omitted). First, GlobalOptions argues that NATG fails to sufficiently allege the identity of the NATG Materials sought to be protected. It argues that the Counterclaim refers to "NATG Materials" which are defined only as NATG's "copyrighted materials, proprietary fraud compliance training processes and courses to duplicate the copyrighted materials and proprietary processes owned by NATG" and NATG's "Course" as a "fraud investigative compliance course." (Doc. 12, Counterclaim ¶¶ 23, 26, 27).

The Counterclaim asserts that the parties have had several years of business dealings together, and most recently operated under a Service Agreement, which was attached to the Counterclaim as Exhibit A. (Doc. 12–1). While NATG did not file Exhibit A of the Service Agreement which describes the professional services it and GlobalOptions were to agree to, the Service Agreement lends support to the idea that the copyrighted works NATG

seeks to protect are sufficiently identified to satisfy the pleading standard of Federal Rule of Civil Procedure 8. For example, Section 5 of the Service Agreement provides NATG with the exclusive right to sell its proprietary material to GlobalOptions. (Doc. 12, Counterclaim ¶ 16). Section 7 provides that NATG was the owner of trade secrets and that GlobalOptions understood that these materials were proprietary. (*Id.* ¶ 17). GlobalOptions also agreed not to reverse-engineer, duplicate, alter or disseminate NATG's copyrighted materials. (*Id.*). Moreover, GlobalOptions attached to its Complaint some of NATG's copyright materials. (Doc. 26, p. 10; Docs. 1–2, 1–3, 1–4, 1–5). Taking these allegations as a whole, NATG has identified the form and nature of its works sufficient to satisfy the Rule 8 pleading standard.

■ GlobalOptions also asserts · that NATG makes only vague allegations as to how GlobalOptions engaged in any copying of NATG Materials. NATG alleges that GlobalOptions has duplicated, reverse-engineered, altered, and disseminated NATG's copyrighted materials, training processes, and courses without NATG's knowledge or approval. (Doc. 12, Counterclaim ¶¶ 8, 23). NATG also alleges that GlobalOptions has been providing some of NATG's Materials to other end users without NATG's consent. (*Id.* ¶ 28). These allegations are sufficient to allege the copying element of a copyright infringement claim.

#### iv. Secondary Infringement

■ GlobalOptions moves to dismiss the secondary infringement claims on the basis that NATG has failed to allege all of the elements and the factual bases for the claims. As to Count IV, "[t]o prove contributory infringement, a plaintiff must show that one 'with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" *Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*, No. 8:08–cv–1227–T–30EAJ, 2011 WL 6097980, at *3 (M.D.Fla. Dec. 7, 2011) (quoting *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir.1987)). Thus, for a party to be held liable for a claim of contributory infringement, there must first be a finding of direct infringement. *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1298 n. 11 (11th Cir.2008).

GlobalOptions argues that NATG failed to identify the third parties that committed the infringement. However, NATG alleges that it is GlobalOptions' clients and users that have contributed direct infringement. (Doc. 12, Counterclaim ¶ 64). At this stage of the litigation, the pleading standard does not require NATG to allege who exactly these clients and users are. GlobalOptions also argues that NATG has failed to identify the underlying direct infringement committed by these third parties. The Court agrees. The Counterclaim is devoid of factual allegations that demonstrate *GlobalOptions' clients and users* have engaged in infringing conduct themselves. At most, NATG alleges that GlobalOptions caused "unauthorized reproductions, distributions, or reverse-engineered versions embodying the NATG copyrights material without authorization." (*Id.*). More factual content is needed to support this legal conclusion. Thus, the Court will allow NATG to amend its Counterclaim as to Count IV.

■ As to Count V, "[t]o prove ... vicarious infringement, a plaintiff must show that 'the defendant profits directly from the infringement and has a right and

ability to supervise the direct infringer.'" *Klein & Heuchan*, 2011 WL 6097980, at *3. Here, there must also first be a finding of direct infringement to hold the party liable; however, knowledge of the direct infringement is not necessary. *Id.* Global-Options asserts that this claim should be dismissed on the same basis as Count IV. A review of the Counterclaim shows that NATG alleges that GlobalOptions had the right to supervise its clients and users and refused to exercise such supervision. (Doc. 12, Counterclaim ¶ 73). NATG goes on to assert that, as a result, GlobalOptions' clients and users infringed on NATG's copyrights and that GlobalOptions benefited, as a result, as it was able to provide its services to its clients and users for less money, and it did not pay NATG for the use of its copyrights. (*Id.* ¶¶ 73–74). Once again though, NATG does not provide enough factual allegations to describe the infringement of the third party, alleging only that GlobalOptions' clients and users have "infringed NATG's copyrights, including by reproducing, distributing, or reverse-engineering versions embodying the NATG copyrighted material without authorization." (*Id.* ¶ 73). More facts are needed to support this legal conclusion. Thus, the Court will allow NATG to amend its Counterclaim as to Count V.

 As to Count VI, "[t]o establish a claim for inducement, a plaintiff must show that the defendant (1) engaged in purposeful conduct that encouraged copyright infringement, with (2) the intent to encourage such infringement." *Arista Records LLC v. Lime Grp. LLC*, 784 F.Supp.2d 398, 425 (S.D.N.Y.2011) (citing *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005)). GlobalOptions asserts that NATG has failed to al-

lege both that GlobalOptions engaged in purposeful conduct that encouraged copyright infringement and that it had intent to encourage such conduct. (Doc. 16, p. 17). NATG alleges that GlobalOptions "has infringed NATG's copyrights by inducing [GlobalOptions'] users and clients to reproduce, distribute, or otherwise disseminate NATG's copyrighted works," (Doc. 12., Counterclaim ¶ 82), and that such conduct was in willful disregard of NATG's rights (*id.* ¶ 84). These bare legal conclusions are not sufficient and NATG must state more factual allegations in support. Thus, the Court will allow NATG to amend its Counterclaim as to Count VI.

## B. The State Law Claims

### i. Misappropriation (Count VII)

 GlobalOptions moves to dismiss NATG's misappropriation claim arguing that it is unclear from NATG's counterclaim whether it intends to bring the claim under common law or Florida statute. (Doc. 16, pp. 18–22). Florida's Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. §§ 688.001–.009, clearly "displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008(1). In its response, NATG affirms that it brings its claim for misappropriation pursuant to FUTSA. (Doc. 26, pp. 15, n. 2).

GlobalOptions argues that NATG has failed to allege that GlobalOptions misappropriated a trade secret. (Doc. 16, p. 21). GlobalOptions acknowledges that while NATG has generally alleged that it misappropriated NATG's trade secrets (*see* Doc. 12, Counterclaim ¶ 35), NATG fails to clarify whether its claim for misappropriation is based on a trade secret or something else. (Doc. 16, p. 21). As previously men-

tioned, NATG alleges that NATG owned valuable trade secrets (Doc. 12, Counterclaim ¶ 17), that its trade secrets were misappropriated (*id.* ¶ 35), and that GlobalOptions is responsible for such misappropriation (*id.* ¶¶ 90–91). Thus, NATG has sufficiently alleged that what GlobalOptions allegedly misappropriated was a trade secret.

Next, GlobalOptions argues that NATG has not identified with reasonable particularity what trade secret was misappropriated. (Doc. 16, p. 21). In asserting this claim, NATG has "the burden to describe the alleged trade secret with reasonable particularity." *Treco Int'l S.A. v. Kromka,* 706 F.Supp.2d 1283, 1286 (S.D.Fla.2010). However, as addressed in Section III.A.iii, *supra,* NATG has stated with reasonable particularity the trade secret it alleges was misappropriated. The Counterclaim asserts that the parties have had several years of business dealings together and have recently operated under a Service Agreement, which is attached to the Counterclaim as Exhibit A. (Doc. 12–1). While NATG did not file Exhibit A of the Service Agreement which describes the professional services it and GlobalOptions were to agree to, the Service Agreement lends support to the idea that the copyrighted works NATG seeks to protect are sufficiently identified to satisfy the pleading standard of Federal Rule of Civil Procedure 8.

■ Lastly, GlobalOptions contends that NATG fails to identify how its actions constitute misappropriation. (Doc. 16, p. 22). Misappropriation is defined broadly under FUTSA. *See* Fla. Stat. § 688.002(2). NATG has certainly alleged that GlobalOptions has disseminated NATG's copyrighted and trade secret works to GlobalOptions clients and users without the permission of and without compensation to NATG. (Doc. 12, Counterclaim ¶¶ 28, 30). Thus, GlobalOptions motion to dismiss is denied as to Count VII.

### ii. Accounting (Count VIII)

■ In Count VIII, NATG petitions for an accounting of the money it is owed under the payment arrangement set forth in the Service Agreement. (Doc. 12, Counterclaim ¶¶ 98–101). GlobalOptions asserts that the Court should dismiss this claim. (Doc. 16, pp. 24–25). GlobalOptions argues that accounting is a remedy, and not a separate cause of action, relying on *Zaki Kulaibee Establishment v. McFliker,* 771 F.3d 1301, 1310 n. 21 (11th Cir.2014). The parties disagree as to whether a request for an accounting is properly pleaded as a separate cause of action or whether it is sufficient to request the relief as a remedy to liability as an independent cause of action. In *Zaki,* the Eleventh Circuit recently noted that "an accounting is best understood as a *remedy* for a cause of action, not as a cause of action in its own right." *Id.* at 1310 n. 21.

■ However, whether a request for accounting is pleaded as a remedy or a separate cause of action, under Florida law, to obtain an accounting, "a party must show either (1) a sufficiently complicated transaction and an inadequate remedy at law or (2) the existence of a fiduciary relationship." *Id.* at 1311 (reviewing Florida law on accounting). In Count VIII, NATG simply alleges that, pursuant to the Service Agreement, it was to be paid a fee per user for the use of its materials and that, to date, NATG has not received a reconciliation or accounting of what it is owed. (Doc. 12, Counterclaim ¶¶ 98–99). NATG has alleged neither of the circumstances outlined above. Therefore,

NATG's claim for accounting will be dismissed without prejudice. If NATG reasserts that it is entitled to an accounting, it shall plead it as a remedy for the appropriate causes of actions.

### iii. Temporary Injunctive Relief (Count X) and Permanent Injunctive Relief (Count XI)

 Much like its argument to dismiss NATG's claim for accounting, GlobalOptions argues that NATG's claims for injunctive relief should be dismissed because an injunction is a remedy and not an independent cause of action. (Doc. 16, p. 25). NATG does not concede this point. (Doc. 26, pp. 18–20). However, it is well-established that injunctive relief is not a proper claim for relief in and of itself, but rather a remedy that is available upon a finding of liability on a claim. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir.2005), *cert. denied*, 547 U.S. 1192, 126 S.Ct. 2862, 165 L.Ed.2d 895 (2006); *Transatlantic, LLC v. Humana, Inc.*, No. 8:13–CV–1925–T–17TBM, 2014 WL 5039667, at *9 (M.D.Fla. Sept. 30, 2014). Because injunctive relief is not a proper claim, Counts X and XI will also be dismissed without prejudice. NATG may pursue injunctive relief as a remedy to any of the remaining claims stated in the Counterclaim (or Amended Counterclaim, in the event one is filed).

### iv. Unjust Enrichment (XII)

GlobalOptions moves to dismiss NATG's claim for unjust enrichment. (Doc. 16, p. 22). In response, NATG notifies the Court that it is voluntarily withdrawing its unjust enrichment claim as GlobalOptions does not dispute the existence or validity of the Service Agreement at issue. (Doc. 26, p. 17). As NATG has notified the Court that it is voluntarily withdrawing Count XII, it will be dismissed without prejudice.[5]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Counterclaim Defendant's Motion to Dismiss Counts III–VIII and X–XII of Counterclaim (Doc. 16) is **GRANTED IN PART and DENIED IN PART** as follows:

 a. Counts IV, V, VI, VIII, X, XI, and XII are **DISMISSED WITHOUT PREJUDICE.**

 b. NATG's claims for statutory damages and attorney's fees pursuant to 17 U.S.C. §§ 504(c) and 505 in Counts III, IV, V, and VI are **STRICKEN.**

 c. The motion is otherwise **DENIED.**

2. NATG may file an Amended Counterclaim **on or before September 2, 2015** to correct the deficiencies identified in this Order.

3. GlobalOptions shall respond to NATG's Counterclaim, or Amended Counterclaim in the event one is filed, **on or before September 9, 2015.**

---

**5.** GlobalOptions requests that this claim be dismissed with prejudice. However, as NATG did not specify whether it was voluntarily withdrawing its claim with or without prejudice, the dismissal will be without prejudice. *See* Fed.R.Civ.P. 41(a)(1)(B).