In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 22-1764

ALAN K. CARLSON and PETER DELUCA, on behalf of a class,

*Plaintiffs-Appellants*,

*v.*

NORTHROP GRUMMAN SEVERANCE PLAN and NORTHROP GRUMMAN CORPORATION,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-cv-02635 — **Andrea R. Wood**, *Judge*.

_____

ARGUED FEBRUARY 9, 2023 — DECIDED MAY 8, 2023

_____

Before EASTERBROOK, HAMILTON, and LEE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Northrop Grumman laid off some workers in 2012 and did not provide severance benefits to all of them. The firm's Severance Plan ("the Plan" for short) provides that a laid-off employee regularly scheduled to work at least 20 hours a week will receive severance benefits if that employee "received a cover memo, signed by a Vice President of Human Resources (or his/her designee), with this

document addressed to you individually by name." Another part of the Plan confirms this requirement: "You must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit." Alan Carlson and Peter DeLuca, who did not receive such a document (which the parties call the "HR Memo"), filed this suit contending that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, entitles them to severance benefits anyway.

As plaintiffs see things, their eligibility is established by the fact that they regularly worked more than 20 hours a week. They depict the HR Memo as a ministerial document that verifies eligibility under the 20-hour standard. Northrop Grumman and the Plan, by contrast, depict the HR Memo as the means by which management decides which employees deserve severance pay—or perhaps which employees the firm can afford to pay. The district court granted summary judgment in defendants' favor, ruling that the Plan's language gives the HR Department discretion to choose who, if anyone, gets severance pay on being laid off. 2022 U.S. Dist. LEXIS 59142 (N.D. Ill. Mar. 31, 2022). The judge added that ERISA does not prevent a severance plan (a form of welfare-benefit plan in ERISA's terminology) from possessing and exercising discretion to determine recipients.

Plaintiffs and the defendants agreed to have a magistrate judge resolve the case under 28 U.S.C. §636(c). But once the suit was certified as a class action (on behalf of all laid-off employees who did not receive a HR Memo), and the stakes multiplied, Northrop Grumman asked the district judge to resume control. The judge obliged.

Assignment to a magistrate judge depends on a district judge's consent, and the statute allows the judge to rescind that assignment. "The [district judge] may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection." 28 U.S.C. §636(c)(4). The district judge found that the increased stakes constituted "good cause" for withdrawing the reference. Plaintiffs say that this cannot be so, given the holding of decisions such as *Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266 (7th Cir. 1998), that magistrate judges may preside over class actions if the representative plaintiffs (and all defendants) have consented. Plaintiffs also rely on *Lorenz v. Valley Forge Insurance Co.*, 815 F.2d 1095 (7th Cir. 1987), which held that the amendment of the complaint to add a demand for substantial punitive damages did not allow the defendant to withdraw consent to decision by a magistrate judge.

Neither *Williams* nor *Lorenz* addresses the meaning of "good cause" under §636(c)(4). Indeed, neither decision cites §636(c)(4). *Williams* holds that magistrate judges may resolve class actions, with the required consent provided by the representative parties. *Lorenz* holds that an increase in the stakes does not allow a litigant to revoke consent unilaterally. What a district judge may do under §636(c)(4) is a different matter.

"Good cause", the standard that applies to decisions on a judge's initiative—including such decisions after a litigant files a motion, see *Murret v. Kenner*, 894 F.2d 693, 695 n.4 (5th Cir. 1990)—is a matter of more or less, not a bright line. This implies deferential appellate review. See *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 398–99 (1993). We do not see any abuse of discretion. Class

certification complicated and prolonged the litigation; almost a decade passed between its filing and its resolution. Withdrawing a reference in order to make a simple legal decision that ends the suit has much to be said for it.

And what difference could it make who resolved the suit in the district court? The meaning of the Plan—like the meaning of ERISA—is a question of law. A court of appeals makes an independent decision about a pure question of law. It would waste everyone's time to remand for decision by a magistrate judge, when the effective decision will be made in this court no matter who presides in the district court.

The merits of plaintiffs' claim do not require extended discussion. The Plan makes the receipt of severance benefits contingent on receipt of a HR Memo, which plaintiffs and the other class members did not get. Welfare-benefit plans under ERISA—unlike retirement plans—need not provide for vesting, and the terms of welfare-benefit plans are entirely in the control of the entities that establish them. When making design decisions, employers may act in their own interests. *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999).

One of the choices that employers may make when designing welfare-benefit plans is to include a discretionary component. *McNab v. General Motors Corp.*, 162 F.3d 959, 961 (7th Cir. 1998). A plan's administrator acts in a fiduciary capacity when exercising discretion, but the firm's management does not. The Northrop Grumman Plan allocates discretion to the Human Resources Department, a non-fiduciary that is entitled to exercise that discretion in Northrop Grumman's interest.

Workers who know that management has discretion to award or withhold certain benefits may view their positions as less valuable (unless they negotiate to receive HR Memos at the outset of their employment), but ERISA leaves it to the plan's sponsor to decide whether that long-term cost is worth bearing when making short-term decisions.

Plaintiffs tell us that, until October 2011, Northrop Grumman provided a HR Memo to every laid-off employee who had worked enough hours. Northrop Grumman denies this, but like the district judge we cannot see why it matters. A person possessing discretion may change the way that discretion is exercised. So even if Northrop Grumman had announced the universal-severance-benefits norm that plaintiffs believe it had until October 2011, this would not prevent it from changing that approach.

Similarly, the fact that Northrop Grumman may have awarded benefits (such as continuing health care) to some laid-off employees who lacked a HR Memo shows only that the firm may have made a mistake; it does not create a legal entitlement to have the mistake extended to other kinds of benefits. Likewise with the fact that some clerical employees may have treated the 20-hour threshold as sufficient for benefits and entered that error in a corporate database.

What plaintiffs are advancing is an estoppel argument: How discretion was exercised at one time prevents the plan's sponsor from exercising discretion differently in the future. Rights under ERISA are not subject to estoppel, however; the sponsor always may, indeed always *must*, apply a pension or welfare plan as written. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007).

Even the distribution of a written summary plan description that bluntly tells workers that they have certain benefits missing from the full plan does not prevent the sponsor from enforcing the plan's terms. *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). The plan itself—not deliberate past practice, not mistaken past practice, and not mistaken efforts to describe the benefits in writing—always controls. Some decisions, including *Kannapien*, suggest that "extreme circumstances" may lead to estoppel, but we need not pursue that thought, if it has any force after *CIGNA* held that even bad written advice does not support departure from a plan. Nothing "extreme" happened at Northrop Grumman. Nor can relief for plaintiffs arrive via reforming the Plan. *CIGNA* held that reformation is in principle an available equitable remedy but that even a mistake in a summary plan description would not by itself justify that relief—for, as the Justices stressed, 563 U.S. at 437–38, a plan's sponsor creates its terms, which cannot be varied by an administrator or a clerical employee.

Plaintiffs describe Northrop Grumman's conduct as "interference" with their rights, in violation of 29 U.S.C. §1140. That begs the question, however. Because the Plan grants discretion to the Vice President of Human Resources, the exercise of that discretion cannot be understood as interference with any rights under the statute or Plan. "If the plan itself provides for [particular] practices, such that [the workers] do not qualify for benefits under its terms, they cannot prevail on an ERISA claim" under §1140. *Ameritech Benefit Plan Committee v. Communication Workers*, 220 F.3d 814, 824 (7th Cir. 2000). This aspect of plaintiffs' argument effectively asks us to treat the HR Department as their fiduciary. It isn't. The Plan's administrator is their fiduciary but did not make any of the decisions of which plaintiffs complain.

AFFIRMED